UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES SHEPPARD,

        Plaintiff,

        v.                                  Case No. 22-cv-0902-bhl

CO CORRISS,
SGT. MILLER,
KRISTINE DEYOUNG,
CANDACE WHITMAN,
PIERCE,
JOHN DOE,
WARDEN HEPP,
JOHN/JANE DOE OFFICERS, and
SGT. ROSS,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Charles Sheppard, who is currently serving a state prison sentence at Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. Sheppard paid the $402 civil case filing fee on August 31, 2022. This matter comes before the Court to screen the complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief

from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to Sheppard, he had been taking bupropion for years to help with his depression and mental health challenges. Sheppard explains that, after he was wrongfully accused of hiding his bupropion in his cheek rather than swallowing it, Defendants Pierce, Candace Whitman, and the John Doe Psychiatry Director decided to abruptly discontinue his prescription. Sheppard

explains that he informed Pierce that he had experienced painful withdraw symptoms in the past when his bupropion was abruptly stopped, but they refused to taper him off the medication. According to Sheppard, as a result of the abrupt discontinuation, he began to experience increased anxiety, depression, and suicidal proclivities. Dkt. No. 1 at 2-3.

Sheppard asserts that, on December 24, 2019, at about 8:00 p.m., he informed Defendant Sgt. Miller that he was going to harm himself and he needed to be placed in observation status immediately. Sheppard states that he tried to give Miller the blister pack of medication he had in his cell, but Miller said he was busy and did not have time for Sheppard's bullshit. Miller told Sheppard he would be ok and that he would inform a supervisor that Sheppard wanted to talk to him. According to Sheppard, Miller then walked away. Dkt. No. 1 at 4.

Sheppard explains that, about an hour later, he stopped Defendant CO Corriss and informed her he needed to be placed on observation or taken to the emergency room because he was going to kill himself by taking a bunch of pills. Sheppard states that he offered to give her the pills, but she laughed at him and waked away. Sheppard asserts that throughout the night he called Defendant Sgt. Ross to tell him he was going to hurt himself and to inform him of his interactions with Miller and Corriss, but Ross never sent anyone to check on Sheppard. Dkt. No. 1 at 4.

Sheppard asserts that he reached his breaking point at about 10:00 p.m. that night. He states that he swallowed different pills from different blister packs; he estimates that he swallowed more than 150 pills, although he does not state what the pills were (*i.e.*, prescription medication, over-the-counter medication, or vitamins). According to Sheppard, an officer saw Sheppard taking the pills and took him to see a supervisor. Sheppard explains that he told the supervisor and Defendant Nurse Kristine DeYoung that he was very sick and having a hard time breathing. He

3

states that DeYoung refused to send him to the emergency room and instead placed him on observation. Dkt. No. 1 at 4-5.

Sheppard asserts that he felt very sick and vomited throughout the night and into the next morning. He states that he told multiple officers throughout the night that he had been vomiting and was cold. He explains that his suicide smock did not fully cover him because he is 400 pounds, but none of the officers gave him a security blanket. According to Sheppard he filed an inmate complaint about officers ignoring his threats of self-harm and their refusal to take him to the emergency room, but Defendant Warden Hepp dismissed the inmate complaint. Dkt. No. 1 at 5.

### THE COURT'S ANALYSIS

Prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Sheppard's allegations that Pierce, Whitman, and the John Doe Psychiatry Director refused to taper him off bupropion despite knowing he had previously suffered severe withdrawal symptoms are sufficient for him to proceed with a deliberate indifference claim against them. After the named Defendants have an opportunity to respond to Sheppard's complaint and the Court enters a scheduling order, Sheppard may use discovery to learn the Doe Defendant's name.

Notwithstanding the fact that deliberately causing harm to oneself would normally constitute a superseding or intervening cause of injury, *see Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 888–89, 900 (E.D. Wis. 2006), the duty imposed on prison officials extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). Accordingly, Sheppard may proceed on deliberate difference

4

claims against Miller, Corriss, and Ross based on allegations that they ignored him after he informed them that he was going to harm himself by swallowing numerous pills.

Whether Sheppard states a deliberate indifference claim against Nurse DeYoung based on allegations that she refused to send him to the emergency room after he swallowed about 150 unidentified pills is a closer call. According to Sheppard, DeYoung did not ignore his condition; she placed him in observation to be checked on throughout the night. "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). But Sheppard's assertions that he felt very sick, was (at least initially) having trouble breathing, and vomited throughout the night, are sufficient at this stage to raise a possible inference that DeYoung's decision "represent[ed] so significant a departure from accepted professional standards or practices that it calls into question whether [she] was actually exercising [her] professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Accordingly, Sheppard may proceed on a deliberate indifference claim against DeYoung.

Sheppard does not, however, state a claim against the unnamed officers who checked on him throughout the night and refused to provide him with a security blanket or to send him to the emergency room. The Seventh Circuit has explained that "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Further, "it is not just the severity of the [condition], but the duration of the condition, which determines whether the conditions of confinement are unconstitutional." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). Sheppard's allegation that, because his suicide smock did not fully cover his body, he was cold for a single night without further elaboration on whether the cell was heated or whether he suffered any harm other than discomfort is too thin for the Court to infer that

5

he suffered an extreme deprivation, was denied the minimal civilized measures of life's necessities, or was subjected to substantial harm. *See Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987) (explaining that conditions that are merely inconvenient or uncomfortable do not violate the Constitution because "the Constitution does not mandate that prisons be comfortable").

As to the officers' refusal to send him to the emergency room, Sheppard asserts that, although he was feeling very sick, he was able to talk to the officers and report that he had been vomiting and that he was cold. As already explained, Nurse DeYoung had determined that, based on his symptoms, emergency care was unnecessary and placing Sheppard in observation was sufficient. Sheppard does not allege that his symptoms worsened or that he experienced other symptoms that demanded emergency care. The officers were therefore entitled to defer to the medical provider's judgment that sending Sheppard to the emergency room was unnecessary. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011).

Finally, Sheppard fails to state a claim against Warden Hepp based on allegations that his denial of Sheppard's inmate complaint suggests that he turned a blind eye to the wrongdoing of his subordinates. The Seventh Circuit has explained that "[o]nly persons who cause or participate in the violations are responsible" and "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Therefore, Hepp's dismissal of Sheppard's inmate complaint about a completed act of misconduct does not violate the Constitution.

**IT IS THEREFORE ORDERED** that Sheppard fails to state a claim against Warden Hepp and the John/Jane Doe Officers, so they are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Sheppard's complaint and this order

are being electronically sent today to the Wisconsin Department of Justice for service on CO Corriss, Sgt. Miller, Candace Whitman, Kristine DeYoung, Pierce, and Sgt. Ross.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, CO Corriss, Sgt. Miller, Candace Whitman, Kristine DeYoung, Pierce, and Sgt. Ross shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Sheppard is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of

Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Sheppard may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on September 8, 2022.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge