UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES SHEPPARD,

      Plaintiff,

      v.                             Case No. 22-cv-0902-bhl

JASMINE KORUS,
DANA MILLER,
KRISTINE DEYOUNG,
CANDACE WHITMAN,
CHRISTA PIERCE,
JEFF ANDERS,
WARDEN HEPP,
SCOTT ROSS, and
JOHN/JANE DOE OFFICERS,

      Defendants.[1]

---

## SCREENING ORDER

---

Plaintiff Charles Sheppard, who is currently serving a state prison sentence at Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. The Court gave Sheppard an opportunity to file an amended complaint, which he did on October 6, 2022. The Court will screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

As previously explained, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally

---

[1] The Court uses the correct spelling of the Defendants' names, which were provided by the Wisconsin Department of Justice. *See* Dkt. No. 11.

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

### ALLEGATIONS OF THE AMENDED COMPLAINT

According to Sheppard, he had been taking bupropion for years to help with his depression and mental health challenges. Sheppard explains that after he was wrongfully accused of hiding his bupropion in his cheek rather than swallowing it, Defendants Christa Pierce, Candace Whitman, and Jeff Anders decided to abruptly discontinue his prescription. Sheppard explains that despite him informing Pierce that he had experienced painful withdraw symptoms in the past when his bupropion was abruptly stopped, he was not tapered off the medication. According to Sheppard, as a result of the abrupt discontinuation, he began to experience increased depression, hallucinations, and suicidal proclivities. Dkt. No. 9 at 2.

Sheppard asserts that, on December 24, 2019, at about 8:00 p.m., he informed Defendant Dana Miller that he was going to harm himself and he needed to be placed in observation status immediately. Sheppard states that he tried to give Miller the medication blister packs that he had in his cell, but Miller said he was busy and did not have time for Sheppard's bullshit. Miller told Sheppard he would inform a supervisor that Sheppard wanted to talk to him. According to Sheppard, Miller then walked away. Dkt. No. 9 at 2.

2

Sheppard explains that, about an hour later, he stopped Defendant Jasmine Korus and informed her he needed to be placed on observation or taken to the emergency room because he was going to kill himself by taking a bunch of pills. Sheppard states that he offered to give her the pills, but she laughed at him and walked away. Sheppard asserts that throughout the night he spoke to Defendant Scott Ross to tell him he was going to hurt himself and to inform him of his interactions with Miller and Korus, but Ross never sent anyone to check on Sheppard. Dkt. No. 9 at 3.

Sheppard asserts that he reached his breaking point at about 10:00 p.m. that night. He states that he swallowed different pills from different blister packs; he estimates that he swallowed more than 150 pills. According to Sheppard, an officer saw Sheppard taking the pills and took him to see a supervisor. The on-call psychologist placed Sheppard on observation status. Sheppard also asserts that officers called Nurse Kristine DeYoung, but she never examined Sheppard even though she was informed he had swallowed many pills and was repeatedly vomiting. Dkt. No. 9 at 3.

Sheppard asserts that he felt like he might die and was vomiting throughout the night and into the next morning. He states that he told multiple officers that he had been vomiting and was extremely cold. He explains that his suicide smock did not fully cover him because he is 400 pounds, but none of the officers would ask psychological services if he could have a security blanket. Sheppard states that cold air was blowing out of the vent, and he was shivering and noticeably shaking, but the officers did nothing to help him. Dkt. No. 9 at 4.

## THE COURT'S ANALYSIS

Prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511

U.S. 825, 846 (1994). Sheppard's allegations that Pierce, Whitman, and Anders refused to taper him off bupropion despite knowing he had previously suffered severe withdrawal symptoms are sufficient for him to proceed with a deliberate indifference claim against them.

Notwithstanding the fact that deliberately causing harm to oneself would normally constitute a superseding or intervening cause of injury, *see Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 888–89, 900 (E.D. Wis. 2006), the duty imposed on prison officials extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). Accordingly, Sheppard may proceed on a deliberate difference claim against Miller, Korus, and Ross based on allegations that they ignored him after he informed them that he was going to harm himself by attempting to overdose on pills.

Sheppard also states a deliberate indifference claim against Nurse DeYoung. Sheppard's assertions that he felt like he was going to die after swallowing many pills and that he vomited throughout the night are sufficient at this stage to raise an inference that DeYoung's failure to examine him "represent[ed] so significant a departure from accepted professional standards or practices that it calls into question whether [she] was actually exercising [her] professional judgment." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Sheppard also states a deliberate indifference claim against the unnamed officers who ignored his requests for a security blanket. The Seventh Circuit has explained that "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Further, "it is not just the severity of the [condition], but the duration of the condition, which determines whether the conditions of confinement are unconstitutional." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). Although Sheppard asserts that he was cold for

4

only a single night, his allegations that he was nearly naked, repeatedly vomiting, and visibly shaking as a result of the cold air blowing through the vent in his cell are sufficient at this stage to state a claim. Sheppard does not know the names of the officers who he spoke with, so the Court will add a John/Jane Does placeholder.[2] After the named Defendants have had an opportunity to respond to Sheppard's amended complaint and the Court enters a scheduling order, Sheppard may use discovery to learn the officers' names.

Sheppard does not, however, state a claim against Warden Randall Hepp based on allegations that he failed to properly train officers. Sheppard merely speculates that the officers ignored his threats of self-harm and his requests for a security blanket because they were not properly trained. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The amended complaint contains no factual allegations about the training that Hepp allegedly did or did not provide or whether Hepp, as warden, was even directly involved in training officers. Accordingly, the Court cannot reasonably infer that he is liable for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-566 (2007) ("the complaint's allegations must be enough to raise a right to relief above the speculative level"). Further, Sheppard's assertion that, "[a]s the warden it is [Hepp's] job to make sure the officers that he has hired [are] properly trained" fails to state a claim because the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)

---

[2] Sheppard does not include a John/Jane Does placeholder in the caption of his amended complaint or in the introductory paragraphs identifying the Defendants, *see* Dkt. No. 1 at 1, but it is clear from his allegations that he desires to sue the unnamed officers to whom he complained about the cold. *See Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 559 (7th Cir. 1996) ("courts may construe [complaints] as having named defendants who are mentioned only in the body of the complaint").

("supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable").

## CONCLUSION

**IT IS THEREFORE ORDERED** that Sheppard fails to state a claim against Randall Hepp, so he is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Korus, Miller, Whitman, DeYoung, and Ross shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

The Clerk's Office is **DIRECTED** to update the docket to include a John/Jane Does placeholder.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Christa Pierce pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Christa Pierce shall file a responsive pleading to the amended complaint.

6

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the

Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin on October 14, 2022.

s/ *Brett H. Ludwig*

BRETT H. LUDWIG
United States District Judge
