CHARLES SHEPPARD,

        Plaintiff,

        v.                                  Case No. 22-cv-0902-bhl

JASMINE KORUS, et al.,

        Defendants.

## DECISION AND ORDER

    Plaintiff Charles Sheppard, who is serving a state prison sentence at New Lisbon Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. §1983. On October 14, 2023, the Court allowed Sheppard to proceed on deliberate indifference claims based on allegations that: (1) Christa Pierce, Candace Whitman, and Jeff Anders refused to taper him off medication despite knowing he had previously suffered severe withdrawal symptoms; (2) Dana Miller, Jasmine Korus, and Scott Ross ignored him after he informed them he was going to overdose on pills; (3) Kristine DeYoung refused to examine him after he attempted to overdose; and (4) John Doe officers ignored his requests for a security blanket even though he was nearly naked, vomiting, and visibly shaking. Dkt. No. 13 at 3-5.

    On February 13, 2023, Defendants Anders, DeYoung, Korus, Miller, Ross, and Whitman filed a motion for partial summary judgment on exhaustion grounds. Dkt. No. 22. The Court granted Pierce's motion to join in that motion on February 15, 2023. Dkt. No. 27. Defendants assert that Sheppard failed to exhaust his claim that Pierce, Whitman, and Anders abruptly discontinued his medication and his claim that John Doe officers ignored his requests for a security

blanket. On June 5, 2023, the Court dismissed Sheppard's claims against the John Doe officers based on his failure to comply with the Court's orders to timely identify them. Dkt. No. 45. Accordingly, the Court denies as moot that aspect of Defendants' motion. For the reasons explained below, the Court concludes that an evidentiary hearing is necessary to determine whether Sheppard exhausted the administrative remedies as to his claim that Pierce, Whitman, and Anders abruptly discontinued his medication.

## BACKGROUND

Sheppard timely filed an inmate complaint on October 24, 2019, stating that his bupropion medication had been abruptly canceled. Dkt. Nos. 24, 28 at ¶12. About a week later, on October 30, 2019, the institutional complaint examiner recommended the inmate complaint be dismissed. *Id.* at ¶13. The reviewing authority accepted the recommendation and dismissed the complaint on November 4, 2019. *Id.* at ¶14. The institution printed the decision for distribution to Sheppard on November 6, 2019. Dkt. No. 25-2 at 6. Per Wis. Admin. Code DOC 310.12(1), an inmate must file his appeal within 14 days. The day after the institution prints the decision is the first day of the 14-day appeal period. Dkt. No. 25-2 at 6. Thus, Sheppard was required to file his appeal by November 21, 2019.

Sheppard asserts that he sent his first appeal to the corrections complaint examiner (CCE) within 14 days as required, but he did not receive an acknowledgment of receipt, so he sent a second appeal, which was received by the CCE on December 27, 2019, 50 days after the dismissal had been distributed. *Id.* at ¶15; Dkt. No. 30 at ¶3. Sheppard's December 27, 2019 appeal begins: "I want to state for the record that this is my 2nd complaint appeal in regards to the above listed file number. I never received a response back from you period. So, I wrote the ICE & explained this & she says there's no record of me filing an appeal. I'm not sure how that happened unless it

2

was lost in the mail. Either way, I want to formally exhaust my administrative remedies. I want this matter looked into." Dkt. No. 25-2 at 22.

On December 30, 2019, the CCE sent a receipt to Sheppard acknowledging that his December 27, 2019 appeal had been received. Dkt. Nos. 24, 28 at ¶16. On January 10, 2020, the CCE rejected the appeal as untimely, noting that "[n]o other appeal has been received from this inmate for this complaint as he asserts." *Id.* at ¶17. The office of the secretary accepted the CCE's recommendation to reject the appeal as untimely, finding that Sheppard's claim that his first appeal was lost in the mail was not credible and was unsupported by any evidence. *Id.* at ¶18; Dkt. No. 25-2 at 7.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

3

## ANALYSIS

The Prison Litigation Reform Act, which applies to this case because Sheppard was a prisoner when he filed his complaint, provides that a prisoner cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(1). According to the U.S. Supreme Court, exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must pursue each step in the administrative process. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (when a prisoner does not follow procedures his remedies are forfeited, not unavailable). "Exhaustion is an affirmative defense, with the burden of proof on the defendants." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

**1. A factual dispute exists regarding whether Sheppard timely filed his appeal.**

In Wisconsin, to exhaust the available administrative remedies, an inmate must file an inmate complaint through the inmate complaint review system, as outlined in Wis. Admin. Code DOC 310. Defendants do not dispute that Sheppard timely filed an inmate complaint, and Sheppard does not dispute that the decision to dismiss the inmate complaint was printed for distribution on November 6, 2019. Under DOC 310.12(1), an inmate may appeal the dismissal of his inmate complaint within 14 days. The 14-day appeal period began to run on the day after the dismissal was printed, or on November 7, 2019. Dkt. No. 25-2 at 6. Accordingly, Sheppard was required to appeal the dismissal by November 21, 2019. Defendants assert that the CCE did not receive an appeal from Sheppard until December 27, 2019, which is 50 days after the dismissal was printed. Sheppard states under penalty of perjury that he mailed his appeal "well within the 14 day time limit." Dkt. No. 30. He further states that, after not hearing anything in response, he

4

followed up with the institution complaint examiner who told him there was no record of him appealing. *Id.* Sheppard states that he then mailed a second appeal, informing the CCE that his first appeal must have gotten lost in the mail. Defendants assert that the CCE received only one appeal from Sheppard 50 days after the dismissal and that his claim that a prior appeal was lost in the mail is not credible. Therefore, a material dispute of fact exists over whether Sheppard timely appealed the dismissal of his inmate complaint.

**2. Defendants have not shown that Sheppard failed to comply with the regulations.**

Defendants argue that, even if Sheppard's first appeal got lost in the mail, he should have followed up sooner after not receiving a receipt in response to his first appeal. But, while DOC 310.10(4) requires the institutional complaint examiner to provide a written receipt that an *inmate complaint* has been received, no provision requires the CCE to provide a written receipt that an *appeal* has been received.[1] *Compare* DOC 310.10(4) *and* DOC 310.12. Given that the regulations do not require the CCE to provide a receipt, Sheppard had no reason to suspect that his appeal had not been received in the face of the CCE's silence. *But* s*ee Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019) (holding that, because the 2014 regulations required the CCE to provide a receipt of the appeal, the plaintiff was "obliged to regard the absence of receipt as a red flag").

Defendants highlight that Sheppard received a receipt in response to his second appeal, which included instructions that a prisoner who does not receive a recommendation from the CCE within 35 days may write directly to the office of the secretary. Dkt. No. 23 at 12. But Defendants do not explain how a receipt and notice not provided for in the regulations, and that Sheppard did not receive until *after* he submitted his second appeal, would have given him reason to inquire a month earlier about why he did not receive a receipt in response to his first appeal. "Prisoners are

---

[1] The 2014 version of the regulations included a requirement that the CCE provide a receipt of the appeal to the inmate, *see* 310.13(4), but this requirement is not included in the 2018 version, which was in effect at the relevant time.

5

required to exhaust grievance procedures they have been told about, but not procedures they have not been told about." *Hill v. Snyder*, 817 F.3d 1037, 1040 (7th Cir. 2016) (citations omitted). Simply put, Defendant's argument that Sheppard should have acted sooner in response to the lack of a receipt that the CCE was under no obligation to provide is without merit. "The Prison Litigation Reform Act was not meant to impose the rule of 'heads we win, tails you lose' on prisoner suits." *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) (overruled on other grounds).

3. **Defendants have not established that the CCE properly rejected Sheppard's appeal as untimely.**

"Ordinarily, a complaint that is rejected for procedural reasons, rather than dismissed after a determination on the merits, does not exhaust a prisoner's administrative remedies." *Durley v. Kacyon*, No. 21-CV-154-PP, 2022 WL 16530885, at *5 (E.D. Wis. Oct. 29, 2022) (citations omitted). And the Seventh Circuit has held "that a prison grievance rejected solely on the basis of untimeliness will not fulfill the exhaustion requirement." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). Here, the CCE recommended that Sheppard's appeal be rejected as untimely because "[n]o other appeal ha[d] been received from this inmate for this complaint as he asserts." Dkt. No. 25-2 at 6. The office of the secretary accepted the recommendation, noting that Sheppard's assertion that his first appeal must have been lost in the mail was not credible and was unsupported by any evidence. *Id.* at 7. While courts generally defer to prison officials' enforcement of the regulations, they need not do so when that enforcement appears arbitrary or intended to prevent a plaintiff from a meaningful opportunity to present his grievance. *See Jones v. Frank*, No. 07-CV-141-BBC, 2008 WL 4190322, *1 (W.D. Wis. Apr. 14, 2008).

Neither the CCE nor the office of the secretary's decisions explain the basis for their conclusion that Sheppard's assertion was not credible. While the Court agrees that lost mail is uncommon, it is not unheard of, particularly in prisons where inmates must rely on guards (who

6

are burdened by countless other duties) to properly handle their mail.  It is not clear from the CCE or the office of the secretary's decisions if anyone talked to Sheppard or otherwise investigated his assertion that he mailed an appeal within the 14-day window.  Further, the office of the secretary's statement that Sheppard's assertion was unsupported by evidence isn't accurate.  Sheppard explains that he discovered his first appeal had not been delivered after asking the institution complaint examiner for an update.  It is not clear if the CCE or the office of the secretary talked to the institution complaint examiner to verify Sheppard's assertion.  And Defendants do not explain why Sheppard was required to provide evidence along with his good-cause statement.  Once again, it appears that Sheppard was expected to comply with non-existent regulations.

The Court acknowledges that Sheppard could have lied about mailing a prior appeal to avoid the consequence of filing his appeal outside the 14-day window, but Defendants have not shown that the CCE or the office of the secretary had reason to conclude Sheppard was lying.  Had they investigated Sheppard's assertion, the Court would defer to their conclusion, but it appears that they summarily concluded he was lying.  If Sheppard is telling the truth about timely appealing, he did everything the regulations required of him and therefore demonstrated good cause for excusing the late arrival of his second appeal. *See Dole v. Chandler*, 438 F.3d 804, 809-11 (7th Cir. 2006).  If he is lying and his "second" appeal was in fact his first appeal, the office of the secretary properly rejected the appeal as untimely.  But Defendants have not carried their burden of showing it is the latter because no one appears to have investigated Sheppard's assertion.  Given that there appears to be no basis for the office of the secretary's credibility determination, the Court cannot conclude that Sheppard failed to exhaust the administrative remedies before he initiated this action.

7

The Seventh Circuit has instructed that, when there are questions of fact regarding whether a prisoner exhausted the available administrative remedies, a court must conduct an evidentiary hearing to resolve the issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). At the hearing, the court "may hear evidence, find facts, and determine credibility. After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted). Given the conflicting evidence and underdeveloped record, the Court finds that an evidentiary hearing is necessary to determine whether Sheppard exhausted the available administrative remedies in connection with his claim that Pierce, Whitman, and Anders refused to taper him off his medication.

## CONCLUSION

The Court will schedule a date and time for an evidentiary hearing to determine whether Sheppard exhausted the available administrative remedies. Based on Sheppard's filings to date, the Court believes he is capable of representing himself at the hearing.

Dated at Milwaukee, Wisconsin on June 13, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge